IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| GRETCHEN DENARO,<br><br>             Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>             Defendant. | CASE NO. 1:25-cv-2604<br><br>DISTRICT JUDGE<br>CHRISTOPHER A. BOYKO<br><br>MAGISTRATE JUDGE<br>JAMES E. GRIMES JR.<br><br>**REPORT AND<br>RECOMMENDATION** |

Plaintiff Gretchen Denaro filed a complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying her applications for disability insurance benefits and supplemental security income. Doc. 1. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Court referred this matter to a Magistrate Judge under Local Rule 72.2(b)(1) for the preparation of a Report and Recommendation. Following review, and for the reasons stated below, I recommend that the District Court affirm the Commissioner's decision.

**Procedural background**

*Previous application.* In June 2021, Denaro applied for disability insurance benefits and supplemental security income alleging a disability

onset date in September 2019.[1] Tr. 76. In her applications, Denaro alleged disability due to depression and type II diabetes. Tr. 82. Her claims were denied initially in September 2021, and on reconsideration in November 2021. Tr. 76. Denaro then requested a hearing before an administrative law judge ("ALJ"). Tr. 76. ALJ Catherine Ma held a telephonic hearing in July 2022. Tr. 76. Denaro, who was represented by counsel, and a vocational expert appeared and testified at the hearing. Tr. 76. Weeks later, the ALJ issued a written decision finding that Denaro was not disabled. Tr. 73, 77. In June 2024, this Court affirmed the ALJ's decision in *Denaro v. Commissioner of Social Security*, Case No. 1:23-cv-01532, 2024 WL 2816023 (N.D. Ohio June 3, 2024).

*Present application.* In August 2023, about a year after ALJ Ma denied her prior applications, Denaro re-applied for disability insurance benefits and supplemental security income, alleging a disability onset date of January 1, 2020. *See* Tr. 273, 276. This time, Denaro claimed that she was disabled and limited in her ability to work due to: depression, diabetes type II, anxiety, and high blood pressure. *See* Tr. 337. As with Denaro's prior application, the Commissioner denied Denaro's new applications initially and on reconsideration. *See* Tr. 135, 140, 147, 151.

In May 2024, Denaro requested a hearing. Tr. 154. In October 2024, ALJ Frederick Andreas held a telephonic hearing. *See* Tr. 47. Denaro appeared,

---

[1]     "Once a finding of disability is made, the [agency] must determine the onset date of the disability." *McClanahan v. Comm'r of Soc. Sec.*, 193 F. App'x 422, 425 (6th Cir. 2006).

testified, and was represented by counsel at the hearing. Tr. 53–62. Qualified vocational expert Alida Coles also testified. Tr. 62–69. In November 2024, the ALJ issued a written decision finding that Denaro was not entitled to benefits. *See* Tr. 30–41.

In November 2024, Denaro appealed the ALJ's decision to the Appeals Council. *See* Tr. 246–47. In October 2025, the Appeals Council denied Denaro's appeal, making the ALJ's November 2024 decision the final decision of the Commissioner. Tr. 6; *see* 20 C.F.R. § 404.981.

Denaro timely filed this action in December 2025. Doc. 1. In it, she presents three issues for review:

> 1. The ALJ committed harmful error when he applied the wrong standard of review.
>
> 2. The ALJ erred at Step Two of the Sequential Evaluation when he failed to properly apply the criteria of Social Security Ruling 96-8p and consider all of Plaintiff's impairments and related limitations when forming the RFC.[2]
>
> 3. The ALJ committed harmful error when he failed to properly apply the criteria of Social Security Ruling 16-3p.

Doc. 7, at 1.

---

[2] A residual functional capacity (RFC) is an "assessment of" a claimant's ability to work, taking his or her "limitations … into account." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Circ. 2002). Essentially, it is the Social Security Administration's "description of what the claimant 'can and cannot do.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004) (quoting *Howard*, 276 F.3d at 239).

**Evidence**[3]

*Personal and Vocational Evidence*

Denaro was born in 1962, making her almost 58 years of age at the time of disability onset. Tr. 86. She completed high school. *E.g.,* Tr. 338. She has relevant past work experience from 2003 to 2012 as a program manager, and from 2015 to 2019 as an accounting clerk. *See* Tr. 338.

*Medical Evidence*

In 2021 and 2022, Denaro attended bi-weekly therapy at Psychological and Behavioral Consultants with diagnoses of recurrent and moderate major depressive disorder and chronic post-traumatic stress disorder (PTSD). Tr. 408. Throughout her psychotherapy appointments, her providers continued to observe that Denaro was depressed or sad. *See e.g.,* Tr. 458, 461, 467, 473, 488, 497, 501, 504, 2180, 2183, 2186, 2189. For example, in January 2021, Denaro reported symptoms of fatigue, depressed mood, feelings of hopelessness, feelings of worthlessness, feeling helpless, flashbacks, distress at reminders of past traumas, and feelings of abandonment. Tr. 407. One psychotherapy note also shows that she had a "lengthy history of depression" and "suicidal ideation resulting in repeated hospitalizations." Tr. 413. Denaro told her therapist in April 2021 that she was "using self[-]talk/grounding to cope with intense

---

[3]     The recitation of evidence is not intended to be exhaustive and is generally limited to the evidence cited in the parties' briefs and relevant to their arguments.

4

episodes of feeling worthless." Tr. 419. As of September 2021, Denaro described a worsening of her mood with increased feelings of worthlessness and hopelessness. Tr. 452. Months later, in February 2022, Denaro reported having suicidal thoughts, but she was not sure whether the thoughts were suicidal or just repetitive thoughts which she needed to dismiss. Tr. 476. By January 2023, however, Denaro's mood and sense of self-worth had improved. Tr. 2195. In addition, throughout the relevant period, providers consistently observed that Denaro had good insight and intact memory. *See e.g.*, Tr. 458, 461, 467, 473, 488, 497, 501, 504, 2180, 2183, 2186, 2189.

In October 2023, Denaro completed a Function Report. Tr. 344-51. In it, Denaro explained that she "was unable to get out of bed due to depression" and "[t]he bathroom is the only room" she went to besides her bedroom. Tr. 344. She felt "listless[,]" often staying in bed without eating, and only bathed once a week. Tr. 345. In December 2023, Denaro attended a consultative examination, where Jacob Blank, D.O., diagnosed her with depression, type 2 diabetes, anxiety, high blood pressure, and generalized deconditioning. Tr. 573. Days later, state agency reviewer Amy Ginsberg, Ph.D., examined Denaro and diagnosed her with persistent depressive disorder with intermittent major depressive episodes. Tr. 585. Denaro, however, reported that she was able to shop, cook, drive, clean her home, and socialize with friends. Tr. 585.

Also in December 2023, Denaro was examined by Arashi Rashidi, MD, for her chronic kidney disease. Tr. 543–56. Dr. Rashidi assessed Denaro as

5

having stage II to III chronic kidney disease with proteinuria, hypertension, and diabetes. Tr. 545. In late March 2024, Denaro was hospitalized after two or three "days of nausea and vomiting." Tr. 1330. Denaro's discharge summary in early April 2024 noted several diagnoses including uncontrolled Type II diabetes. Tr. 1330. Around the same time, Denaro also complained about her right shoulder, and X-rays revealed moderate acromioclavicular osteoarthritis in that area. Tr. 1291–93. She received a steroid injection in her right shoulder for the discomfort. Tr. 1292–93.

Following examinations in January 2024 with Drs. Blank and Ginsberg, Denaro "report[ed] improvement in her mood" while complying with her prescribed medication regimen of Trintellix, Rexultri, and Wellbutrin. Tr. 617, 624. Although she acknowledged experiencing depression and anxiety at times, she expressed that her mood became "more manageable even with life stressors occurring." Tr. 617. Denaro's anxiety and depression spiked in May because of difficulties contacting her provider and refilling her prescription, Tr. 2211, but by June, Denaro began to see a different provider and had her prescription refilled, Tr. 1283. She also reported that she stopped wearing diapers because her incontinence had "gotten better." Tr. 1270. A physical examination in September 2024 found Denaro physically normal overall, with no mention of incontinence. Tr. 1124.

*Hearing testimony*

Denaro, who was represented by counsel, testified in person at an administrative hearing in October 2024. Tr. 49. Denaro testified that her

6

overall condition had worsened since July 2022, with her depression remaining "constant." Tr. 55. She experienced significant difficulty "doing anything at home" and described her memory as "iffy." Tr. 55. In addition, due to her lack of energy, Denaro's interaction with her nephew's young children—whom she referred to as her grandchildren—was "very reduced lately"; instead, she now sees them "maybe once a week just to say hi." Tr. 62. Denaro expressed her belief that she was unable to work, primarily due to lack of energy and urinary incontinence. Tr. 59.

Denaro said that her urinary incontinence had continued at least for a year and gotten worse. Tr. 56-57. She testified that incontinence requires her to wear a diaper constantly and that she "pretty much fill[s] it every day[.]" Tr. 58. She explained that going to the bathroom is challenging because she often experiences dizziness and weakness. Tr. 57. This issue was compounded by the fact that the bathroom in her house is located on the second floor, and she requires "a lot of time" climbing stairs. Tr. 57. Denaro also occasionally used an unprescribed cane to stand or walk when she felt dizzy or weak. Tr. 57. Denaro noted that during her most recent employment, she needed to use the bathroom four times a day, with each visit taking 10 to 15 minutes. Tr. 60.

Denaro described her most recent employment as a seasonal, part-time position at an office where her husband also worked. Tr. 54. She held that position from May through July 2024. Tr. 54. In her role, Denaro worked 20 hours a week over two and a half days, earning $17 an hour. Tr. 54–55. Denaro

7

said she felt "drained, worn out a bit" after a day of work, and she was ultimately let go because the company did not have as much work as it had expected. Tr. 54–55. Denaro reported a further decline in her ability to work after leaving this employment, stating that she slept constantly and felt unvalued. Tr. 61.

Qualified vocational expert, Alida Coles, also testified. Tr. 63–71. During the hearing, the ALJ and Denaro's counsel posed several hypotheticals to Coles. First, the ALJ described a hypothetical individual of Denaro's age, education, and work experience. Tr. 66. The ALJ then assumed that this individual "has no exertional limitation, and can perform a full range of work at all exertional levels" but "is limited to performing simple routine tasks and "can have frequent interactions with supervisors, coworkers, and the public, and is limited to occasional workplace changes." Tr. 67. Coles testified that this person would not be able to perform any of Denaro's past work. Tr. 67. Coles further testified that there would, however, be multiple jobs in the national economy that the hypothetical individual could perform at medium exertional level, such as order picker, cleaner, and salvage laborer. Tr. 67.

The ALJ expanded the hypothetical to assume that the same individual was "going to be off task for any reason whatsoever[.]" Tr. 67. Coles testified that most employers would tolerate up to 9% off task, but 10% or more off task would be work-preclusive. Tr. 67. Denaro's counsel then modified the hypothetical such that the individual was required to use the bathroom at least

8

four times a day for five to ten minutes. Tr. 68. Coles replied that it would be work-preclusive. Tr. 68. Coles also testified that if the individual required two or three unscheduled breaks per day, ranging from five to fifteen minutes, that requirement would be work-preclusive as well. Tr. 69. Further, Coles stated that most employers would not tolerate an employee missing one day per month on a consistent basis due to inability to leave her house or get out of bed. Tr. 68.

**The ALJ's Decision**

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.

2. The claimant has not engaged in substantial gainful activity since January 1, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: depressive disorder and posttraumatic stress disorder ("PTSD") (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526 416.920(d), 416.925 and 416.926).

5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: She is limited to performing simple, routine tasks. She can have frequent interactions with supervisors, co-workers, and the public. She is limited to occasional workplace changes.

6.     The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7.     The claimant … was 57 years old, which is defined as advanced age, on the alleged disability onset date. She later changes age categories to an individual closely approaching retirement age (20 CFR 404.1563 and 416.963).

8.     The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9.     Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant number sin the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from

10

January 1, 2020, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 33–41.

**Standard for Disability**

Eligibility for social security benefit payments depends on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

An ALJ is required to follow a five-step sequential analysis to make a disability determination:

1. Is the claimant engaged in substantial gainful activity? If so, the claimant is not disabled.

2. Does the claimant have a medically determinable impairment, or a combination of impairments, that is "severe"? If not, the claimant is not disabled.

3. Does the claimant's impairment meet or equal one of the listed impairments and meet the duration requirement? If so, the claimant is disabled. If not, the ALJ proceeds to the next step.

4. What is the claimant's residual functional capacity and can the claimant perform past relevant work? If so, the claimant is not disabled. If not, the ALJ proceeds to the next step.

11

> 5. Can the claimant do any other work considering the claimant's residual functional capacity, age, education, and work experience? If so, the claimant is not disabled. If not, the claimant is disabled.

20 C.F.R. §§ 404.1520, 416.920; *see Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008). Under this sequential analysis, the claimant has the burden of proof at steps one through four. *Jordan*, 548 F.3d at 423. The burden shifts to the Commissioner at step five "to prove the availability of jobs in the national economy that the claimant is capable of performing." *Id.* "The claimant, however, retains the burden of proving her lack of residual functional capacity." *Id.* If a claimant satisfies each element of the analysis and meets the duration requirements, the claimant is determined to be disabled. *Walters Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

**Standard of Review**

A reviewing court must affirm the Commissioner's conclusions unless it determines "that the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Jordan*, 548 F.3d at 422. "'[S]ubstantial evidence' is a 'term of art'" under which "a court … asks whether" the "existing administrative record … contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citations omitted). The substantial evidence standard "is not high." *Id.* at 103. Substantial evidence "is 'more than a mere scintilla'" but it "means only[] 'such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion.'" *Id.* (citations omitted). The Commissioner's "findings … as to any fact if supported by substantial evidence [are] conclusive." 42 U.S.C. § 405(g); *Biestek*, 587 U.S. at 99.

A court may "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Even if substantial evidence or a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice within which" the Commissioner can act, without fear of judicial "interference." *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009) (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)).

**Discussion**

1.  *The ALJ effectively applied the current* Earley *standard for later applications based on a new time period.*

Denaro first asserts that the ALJ erred by adopting an RFC identical to the previous RFC without properly weighing new evidence as required by *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018). *See* Doc. 7, at 11. According to Denaro, "adopting the RFC from the prior determination [i]s an incorrect application of *res judicata* as set forth by the Sixth Circuit in *Earley*

13

… wherein it was determined that a new application was entitled to a fresh look for a new period of alleged disability." Doc. 7, at 8.

On the first page of his written decision, ALJ Andreas outlined the applicable standard of review as follows:

> [T]here is a prior decision from Administrative Law Judge Catherine Ma on July 19, 2022 (B1A). Findings of fact from a prior decision, including a determination of an individual's residual functional capacity and vocational findings, are generally controlling in subsequent, unadjudicated periods unless there is new and material evidence or a showing of "changed circumstances." *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997), *acq.*, SSA AR 98-4(6) and *Dennard v. Secretary of Health and Human Services*, 907 F.2d 598 (6th Cir. 1990), *acq.,* SSA AR 98-3(6). In this case, there is new and material evidence that merits changes to the findings of fact identified in the prior decision.

Tr. 30.

In *Drummond*, the Sixth Circuit said that certain previous cases "clearly demonstrate that the principles of res judicata can be applied against the Commissioner. When the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." 126 F.3d at 842. The Social Security Administration adopted this ruling as Acquiescence Ruling 98-4(6). *See* SSAR 98-4(6), 63 Fed. Reg. 29,771, 1998 WL 274052 (June 1, 1998).

But years later, in *Earley*, the Sixth Circuit qualified the ruling in *Drummond* and stated: "[w]hen an individual seeks disability benefits for a

14

distinct period of time, each application is entitled to review. There is nothing in the relevant statutes to the contrary. And res judicata only 'foreclose[s] successive litigation of the very same claim.'" 893 F.3d at 933 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)). Thus, according to the Sixth Circuit, "a claim that one became disabled in 1990 is not the same as a claim that one became disabled in 1994." *Id.* The Social Security Administration later rescinded Acquiescence Ruling 98-4(6) and replaced it with Acquiescence Ruling 24-1(6), effective December 2, 2024, to reflect the *Earley* decision. *See* SSAR 24-1(6), 89 Fed. Reg. 92,992, 2024 WL 5256889 (Nov. 25, 2024).

More recently, the Sixth Circuit discussed the application of *Earley* in two unpublished decisions. In *Dennis D. v. Commissioner of Social Security*, the Sixth Circuit held that an ALJ's "misstatement of the legal standard" by saying that a prior ALJ's RFC was "binding" did not warrant remand where the record was "replete with evidence" that the ALJ "reached an independent conclusion while recognizing that he was not bound by the prior decision—as required under Earley." No. 23-3667, 2024 WL 1193662, at *4–5 (6th Cir. Mar. 20, 2024), The *Dennis D.* court explained that the question before the court was whether the ALJ, "despite this misstatement of the legal standard, … treated his review of the new application as if he were bound by the prior decision, thereby depriving [the plaintiff] of a 'fresh look'" under *Earley*. *Id.* at *4. Later, in *Gooden v. Commissioner of Social Security*, the Sixth Circuit once again emphasized that "the key question is whether the second ALJ treated the new

15

application 'as if' they were 'bound by the prior decision.'" No. 23-3927, 2024 WL 2830817, at *4 (6th Cir. June 4, 2024) (quoting *Dennis D.*, 2024 WL 1193662, at *4). The Sixth Circuit then explained that courts "need [to] determine only whether the second ALJ *actually* afforded the new application a 'fresh look' under *Earley*, notwithstanding rote recitation of a legal standard suggesting otherwise." *Id.* (emphasis in original).

The record establishes that the ALJ here did what *Earley* and its progeny instruct—he took a "fresh look" and considered the entire record including the new evidence. 893 F.3d at 934. Although the ALJ incorrectly stated at the outset that an earlier decision is "generally controlling" in a subsequent RFC determination, his written decision reveals an in-depth review of the new evidence relevant to Denaro's current claim period. The ALJ detailed Denaro's medical history from July 2022 through September 2024, the period that ALJ Ma's earlier decision in July 2022 did not address. Tr. 37–38; *see Lisa F. v. Comm'r of Soc. Sec.*, No. 2:23-cv-2981, 2024 WL 1464444, at *5 (S.D. Ohio Feb. 22, 2024) (noting that, "[i]n other cases, discussing new medical records provided evidence that the ALJ freshly reviewed a claimant's case"), *report and recommendation adopted*, 2024 WL 1241915 (S.D. Ohio Mar. 22, 2024). The ALJ also correctly identified all impairments alleged by Denaro in her current applications, including conditions not raised in the earlier proceedings. *Compare* Tr. 82 (only alleging depression and type II diabetes), *with* Tr. 37 (alleging anxiety and high blood pressure, besides depression and

16

diabetes). Further, when formulating the RFC, the ALJ provided a rationale distinct from the one for the earlier RFC, while relying on new medical records and testimony adduced at the October 2024 hearing. *Compare* Tr. 36–38 (current RFC), *with* Tr. 81–83 (previous RFC).

As the *Earley* court observed, "[f]resh review is not blind review." 893 F.3d at 934. The ALJ's conclusions do not violate *Earley* simply because his RFC was similar to an earlier RFC. *See Hurst v. Comm'r of Soc. Sec.*, No. 5:23-cv-1722, 2024 WL 3890905, at *13 (N.D. Ohio Aug. 21, 2024); *Johnson v. Dudek*, No. 5:24-cv-1703, 2025 WL 1226638, at *11 (N.D. Ohio Apr. 29, 2025), *report and recommendation adopted*, 2025 WL 1765444 (N.D. Ohio June 26, 2025). Similarly, the mere fact that ALJ Andreas arrived at the same RFC as ALJ Ma, is not "ipso facto proof that [ALJ Andreas] considered [him]self bound by the prior decision, even where a new severe impairment was found." *Conrad v. Comm'r of Soc. Sec.*, No. 1:25-cv-601, 2025 WL 3211018, at *17 (N.D. Ohio Nov. 18, 2025), *report and recommendation adopted*, 2026 WL 696715 (N.D. Ohio Mar. 12, 2026). Nor does the ALJ's outdated reference to *Drummond* rather than *Earley* constitute—by itself—grounds for remand. *See Hoffacker v. Comm'r of Soc. Sec.*, No. 1:23-cv-01010, 2024 WL 692690, at *8 (N.D. Ohio Feb. 20, 2024) ("remand might not be warranted simply because an ALJ cited *Drummond* in support [of] their findings or failed to cite *Earley*").

This case is distinguishable from *Dilauro v. Commissioner of Social Security*, No. 5:19-cv-2691, 2021 WL 1175415 (N.D. Ohio Mar. 29, 2021), on

17

which Denaro relies *See* Doc. 7, at 11; Doc. 9, at 2. In *Dilauro*, the ALJ not only failed to cite *Earley*, but also stated the belief that "[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ," and then fully adopted the claimant's first RFC on the grounds that "no new and material evidence exist[ed]." *Dilauro*, 2021 WL 1175415, at *3. The court reversed the ALJ's decision, finding that these errors "permeated the entire adjudication." *Id.*; *see also Mykael Kline v. Comm'r of Soc. Sec.*, No. 3:23-cv-0754, 2024 WL 1380814, at *8 (N.D. Ohio Mar. 11, 2024) (affirming an ALJ's decision where the ALJ considered earlier RFC findings without the presumption that the RFC remained correct), *report and recommendation adopted*, 2024 WL 1375901 (N.D. Ohio Apr. 1, 2024).

Here, in contrast to *Dilauro*, the ALJ expressly found new and material evidence in the record. In formulating Denaro's new RFC, the ALJ cited and weighed medical records and statements that had not been presented during the first proceedings. While the textual limitations of the new RFC ultimately aligned with the first RFC, ALJ Andreas formulated his RFC through an independent assessment of a new record, without viewing the old RFC as being presumptively binding for his analysis. "When an ALJ makes an outdated reference to the *Drummond* standard, courts have focused on whether 'the ALJ properly applied the correct legal standards in a manner consistent with the Sixth Circuit's decision in *Earley*,' rather than the outdated citation itself." *Pollard v. Comm'r of Soc. Sec.*, No. 1:22-cv-0082, 2023 WL 4706763, at *6 (N.D.

18

Ohio July 24, 2023) (citing *Civitarese v. Comm'r of Soc. Sec.*, No. 1:19 CV-2015, 2020 WL 4366077, at *13 (N.D. Ohio July 30, 2020)). Because that is what the ALJ did here, Denaro's first issue is meritless and provides no basis for remand.

> 2. *The ALJ appropriately found at Step 2 in the sequential evaluation that Denaro's physical impairments were non-severe.*

Denaro next contends that the ALJ "erred at step two of the sequential evaluation" by failing to consider all of her impairments and related limitations when crafting the RFC. Doc. 7, at 12.

At step two of the sequential evaluation, the ALJ determines whether a claimant has a "severe" impairment. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A severe impairment is one that significantly limits the claimant's physical or mental ability to do "basic work activities." *See* 20 C.F.R. § 416.920(c). An impairment is "not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243, n.2 (6th Cir. 2007) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)).

That said, any error at step two is harmless if an ALJ continues with the subsequent steps in the sequential evaluation process. *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (the failure to find an impairment severe at step two is harmless error when the ALJ continues through the remaining steps of the evaluation, where the ALJ can consider non-severe impairments when assessing an RFC); *see Anthony v. Astrue*, 266

19

F. App'x 451, 457 (6th Cir. 2008) ("The fact that some of Anthony's impairments were not deemed to be severe at step two is … legally irrelevant" because the ALJ considered Anthony's severe and non-severe impairments in the remaining steps of the analysis) (citing *Maziarz*); *see also Hedges v. Comm'r of Soc. Sec.*, 395 (6th Cir. 2018). To the extent, therefore, that Denaro challenges the ALJ's step two determination regarding the severity of her impairments, any alleged error is harmless because the ALJ proceeded through the sequential evaluation after finding that Denaro had severe and non-severe impairments. Tr. 33–35; *see Kestel v. Comm'r of Soc. Sec.*, 756 F. App'x 593, 597 (6th Cir. 2018) ("[B]ecause an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, any perceived failure to find additional severe impairments at step two does not constitute reversible error." (citation modified)).

In the alternative, Denaro's claim that the ALJ failed to consider all her impairments and related limitations may be construed as being directed at the step four of the sequential evaluation. Although "the law is clear that steps two and four are separate, 'that does not mean that the two inquiries have no relation.'" *Hobbs v. Bisignano*, No. 2:25-cv-62, 2026 WL 672954, at *4 (E.D. Ky. Mar. 10, 2026) (quoting *McFall v. Comm'r of Soc. Sec.*, No. 7:24-cv-17, 2025 WL 354987, at *5 (E.D. Ky. Jan. 31, 2025)). At step four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. § 404.1520(e). The ALJ must "consider limitations and restrictions

20

imposed by all of an individual's impairments, even those that are not 'severe.'" Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *5 (SSA July 2, 1996). Further, "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

Denaro argues that the ALJ ignored functional limitations imposed by her non-severe physical limitations, including urinary incontinence, when formulating the RFC. Doc. 7, at 13—15. The Sixth Circuit, however, has held that an "ALJ's express reference to SSR 96-8p, along with her discussion of the functional limitations imposed by [the claimant's] non[-]severe impairments at step two of her analysis" supports the conclusion that the ALJ complied with the requirement that she consider all impairments in crafting the RFC. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 852 (6th Cir. 2020). Indeed, an ALJ need not even "mention [a claimant's] non[-]severe impairments in assessing [the claimant's] residual functional capacity"; so long as the ALJ "state[s] that she ha[s] carefully considered the entire record and 'all symptoms' at this step in the process," that can be enough. *Id.* at 851; *accord Hobbs*, 2026 WL 672954, at 3.

Here, in setting out the relevant law, the ALJ cited SSR 96-8p and recognized the requirement that he "consider all of the claimant's impairments, including impairments that are not severe[.]" Tr. 32. Then, in formulating the RCF, the ALJ reiterated that he "considered all symptoms and

the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." Tr. 36. Likewise, in the RFC formulation itself, the ALJ detailed his assessment of evidence regarding Denaro's physical impairments, specifically urinary incontinence and cane use:

> The claimant further testified that she has urinary incontinence. She said that when she gets the urge to use the restroom it is hard for her to make it on time due to dizziness and weakness. She added that she wears a diaper constantly and fills it every day. She said she has had this problem for about a year, but it has worsened. The claimant also testified that she uses a cane at times.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

Tr. 37. In sum, the ALJ did what the Sixth Circuit in *Emard* approved of: correctly acknowledging the requirements of 20 C.F.R. § 416.945 and SSR 96-8; stating his "consideration of the entire record"; and demonstrating thorough consideration of the evidence of Denaro's severe and non-severe impairments. The ALJ did not err in doing so.

    3.    *The ALJ appropriately applied SSR 16-3 in evaluating Denaro's subjective symptoms.*

Finally, Denaro contends that the ALJ improperly applied the criteria outlined in Social Security Ruling 16-3p in evaluating her subjective

22

symptoms. Doc. 7 at 16. Denaro challenges the ALJ's finding that her own description of symptoms was "not entirely consistent with the medical evidence" and claims that the ALJ did not "articulate any supportable rationale" for this finding. *Id.* at 20 (citing Tr. 37). Denaro acknowledges the ALJ's opinion "detailed some of the evidence which supported his conclusion" but maintains that the ALJ still failed to consider "the totality of the evidence in this matter." *Id.* Further, according to Denaro, "[t]he ALJ failed to note that [she] continued to have symptoms related to her psychological impairment, including some suicidal thoughts." *Id.*

SSR 16-3p governs the ALJ's assessment of symptoms, which was formerly referred to as a "credibility" determination in SSR 96-7p.[4] Under SSR 16-3p, an ALJ undertakes a two-step process to assess the limiting effects of a claimant's symptoms. *See* SSR 16-3p, 2017 WL 5180304. At step one, "the ALJ will ask whether … there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's

---

[4] In relevant parts, SSR 16-3p removed the word "credibility" from its predecessor and refocused the ALJ's attention on the "extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at *2 (SSA Oct. 25, 2017). Notably, despite these changes, the procedures for reviewing an ALJ's assessment under SSR 16-3p are substantially the same as the procedures under SSR 96-7p. *See Delong v. Comm'r of Soc. Sec.*, No. 2:18-cv-368, 2019 WL 409364, *7-8 (S.D. Ohio, Feb. 1, 2019). Courts agree that the prior case law involving SSR 96-7p generally applies to the renamed "consistency determination" under SSR 16-3p. *Whicker-Smith v. Comm'r of Soc. Sec.*, No. 1:18-cv-52, 2019 WL 911084, at *5 (S.D. Ohio, Feb. 25, 2019), *report and recommendation adopted*, 2019 WL 1202361 (S.D. Ohio Mar. 14, 2019).

symptoms." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a)); SSR 16-3p, 2017 WL 5180304, at *3. At step two, "if … such an impairment exists," the ALJ "must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities." *Rogers*, 486 F.3d at 247; SSR 16-3p, 2017 WL 5180304, at *4.

To evaluate the "intensity, persistence, and limiting effects of an individual's symptoms," the ALJ considers medical evidence, the claimant's statements, other information provided by medical sources, and any other relevant evidence in the record. *See* SSR 16-3p, 2017 WL 5180304, at *4; 20 C.F.R. § 404.1529(c)(4). A claimant's subjective symptom complaints may support a disability finding when objective medical evidence confirms the alleged severity of the symptoms. *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989). An ALJ, however, is not required to accept a claimant's subjective symptom complaints and may properly discount the claimant's testimony about her symptoms when it is inconsistent with objective medical and other evidence. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003). Besides medical evidence, an ALJ should consider: daily activities; the location, duration, frequency, and intensity of pain or symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication; treatment, other than medication, to relieve pain; any measures used to relieve pain; and "[o]ther factors concerning … functional

24

limitations and restrictions due to pain or other symptoms." 20 C.F.R. § 404.1529(c)(3).

Despite these specific considerations that ALJs are required to examine, SSR 16-3p also requires ALJs to consider "the entire case record." 2017 WL 5180304, at *2. In conducting this analysis, "it is not sufficient for [the ALJ] to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.' It is also not enough for [the ALJ] simply to recite the factors described in the regulations for evaluating symptoms." *Id.* at *10. "The ALJ need not analyze all seven factors, but should show that he considered the relevant evidence." *Hatcher v. Berryhill*, No. 1:18-cv-1123, 2019 WL 1382288, at *15 (N.D. Ohio Mar. 27, 2019) (citing *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005)).

The ALJ here followed SSR 16-3p in evaluating Denaro's subjective symptom complaints. At step one, the ALJ found that Denaro's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 37. Moving to step two, the ALJ found that Denaro's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* In support of these findings, the ALJ detailed medical evidence, Denaro's own statements, other information provided by

25

medical sources, and other relevant evidence in the record. Tr. 37–39; *see* SSR 16-3p, 2017 WL 5180304, at *4; 20 C.F.R. § 404.1529(c)(4).

Further, the ALJ's evaluation of Denaro's symptoms is supported by substantial evidence, and his explanation is specific enough to make clear the weight he gave to all relevant evidence and the reasons for that weight. Contrary to Denaro's assertion that the ALJ failed to note her continuing mental health struggles, the ALJ expressly documented her history of mental impairment, including her self-reported suicidal ideation in February 2024. Tr. 38; *see also* 20 C.F.R. § 404.1529(c)(3)(ii) (instructing ALJs to consider duration, frequency, and intensity of a claimant's pain or symptoms). The ALJ also considered Denaro's use of prescribed medications and completion of therapy sessions, which Denaro had found to be "very helpful." Tr. 38; *see also* 20 C.F.R. §§ 404.1529(c)(3)(iv), (v) (instructing an ALJ to consider type of medication and other treatments used to alleviate the claimant's symptoms). This treatment history mirrors Denaro's own report that her mood had become "more manageable even with life stressors occurring" while on prescribed medication regimen. Tr. 617. Further, as the ALJ noted, Denaro acknowledged that she was able to shop, cook, drive, clean her home, and work part-time. Tr. 36, 858, 1123; *see also* 20 C.F.R. § 404.1529(c)(3)(i) (instructing ALJs to consider the claimant's "daily activities"). Denaro's claim that the ALJ failed to consider "the totality of the evidence in this matter" is therefore meritless. Doc. 7, at 20.

26

Denaro does not cite any portion of SSR 16-3p that she claims the ALJ violated. Instead, she cites various portions of the record to highlight the severity of her mental impairments and resulting limitations. Doc. 7, at 20–21. Yet "[t]he decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). Moreover, "[i]t is well-established there is no requirement that the ALJ discuss each piece of evidence or limitation considered." *Thomas v. Bisignano*, No. 1:23-cv-00612, 2026 WL 376857, at \*7 (N.D. Ohio Feb. 11, 2026), *report and recommendation adopted*, 2026 WL 775557 (N.D. Ohio Mar. 19, 2026); *see also Conner v. Comm'r*, 658 F. App'x 248, 254 (6th Cir. 2016) (finding that an ALJ need not discuss every piece of evidence in the record). This is because "a duty to 'consider' the evidence is different than a duty to 'discuss' the evidence." *Swain v. Comm'r of Soc. Sec. Admin.*, Case No. 1:24-cv-2224, 2025 WL 2322785, at \*7 (N.D. Ohio Aug. 12, 2025). Accordingly, as the Sixth Circuit has explained, "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006).

By arguing that the ALJ failed to consider certain records over others, Denaro essentially invites this Court to reweigh the evidence and substitute its own judgment for that of the ALJ. This Court, however, "does not reconsider

27

facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ." *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. App'x. 411, 414 (6th Cir. 2011); *see also Key*, 109 F.3d at 273 (explaining that the fact that substantial evidence in the record supports an opposite conclusion does not mean that the ALJ's conclusion warrants reversal). Because substantial evidence supports the ALJ's assessment under SSR 16-3p, the Court should decline Denaro's invitation.

### Conclusion

For all the reasons stated, I recommend that the District Court affirm the Commissioner's decision.

Dated: June 29, 2026

*/s/ James E. Grimes Jr.*
James E. Grimes Jr.
U.S. Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–531 (6th Cir. 2019).

28